UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RANDY COWHERD,<br><br>Plaintiff,<br><br>vs.<br><br>JERAMME LARSON, CORRECTION OFFICER, MDSP; BRITTANY ULMER, UNIT STAFF, MDSP; BOB DOOLEY, WARDEN, SDSP; AND UNKNOWN ASSISTANT WARDEN, SDSP;<br><br>Defendants. | 4:18-CV-04068-KES<br><br>ORDER GRANTING MOTION TO AMEND AND DISMISSING CASE |

**INTRODUCTION**

Plaintiff, Randy Cowherd, is an inmate at the Rapid City Community Work Center (RCCWC) in South Dakota. Cowherd filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 and requested leave to proceed in forma pauperis under 28 U.S.C. § 1915. Docket 1; Docket 2. On December 19, 2018, Cowherd's motion to proceed in forma pauperis was granted and his amended complaint was dismissed without prejudice for failure to state a claim upon which relief could be granted. Docket 11. Cowherd now moves for leave to file a second amended complaint. Docket 13. The court now screens Cowherd's second amended complaint under 28 U.S.C. § 1915A, and for the reasons stated below, the court dismisses Cowherd's second amended complaint.

## FACTUAL BACKGROUND

Cowherd's complaint alleges violations of his right to due process during a prison disciplinary matter. Cowherd was on work release at the RCCWC when he was charged with escape and transferred to the Mike Durfee State Prison (MDSP). The facts as Cowherd alleges are as follows:

On July 8, 2017, Cowherd was placed in segregated confinement at RCCWC without written notice of any violation or a disciplinary hearing. Docket 13-1 at 2. He later learned he was accused of not returning to the unit directly after work. *Id.* at 3.

In his Memorandum and Affidavit in Support of Second Amended Complaint, Cowherd describes the conditions in segregated confinement at the RCCWC. Docket 14 at 4. Inmates in segregation do not have access to radios, books, or legal materials. *Id.* Inmates are in their cells 24 hours a day with the lights always on. *Id.* During the twenty days in confinement, he was permitted to shower three times. *Id.*

On July 10, 2017, Cowherd had an initial appearance in state court and the judge informed Cowherd that he was charged with second degree escape on July 8, 2017. Docket 13-1 at 3. On July 26, 2018, these charges were dropped. *Id.*

After the state charges were dropped, the defendants pursued internal discipline. *Id.* On Friday, July 28, 2017, at 8:30 a.m., Brittany Ulmer, Cowherd's assigned staff representative, told Cowherd his disciplinary hearing would be Monday to allow her to collect evidence. Docket 13-1 at 2. An hour

2

later, Ulmer returned with the Disciplinary Hearing Officer Jeramme Larson to hold the disciplinary hearing. *Id.*

At 9:30 a.m. on July 28, 2017, Larson held a disciplinary hearing. *Id.* Cowherd did not receive notice twenty-four-hours in advance of the hearing. *Id.* Cowherd was not allowed to present evidence or call witnesses. *Id.* Ulmer perjured details of witnesses and evidence. *Id.*

Cowherd believes Larson was biased against him due to a previous disciplinary matter. *Id.* at 4. Cowherd was previously charged with a rule violation. *Id.* Cowherd was found not guilty of the rule violation because he was incorrectly written up. *Id.* As a result, Larson had to go to the warden to have the disciplinary action removed from Cowherd's record. *Id.*

After the July 28, 2017 hearing, the wardens failed to investigate this incident and were indifferent to Cowherd's claims. *Id.* at 3. Wardens also failed to train their subordinates to follow procedures. *Id.*

As a result, Cowherd was deprived of liberty and property. Cowherd's security status was heightened, and he lost his initial parole date for non-compliance with his Individual Program Directive (IPD). *Id.* at 4. Cowherd suffered "stress, dejection, hopelessness, and ire." *Id.* At MDSP, Cowherd's "issues with PTSD were exacerbated from living in an atmosphere with violent offenders and sexual predators." *Id.*

## LEGAL STANDARD

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.

*Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). As a *pro se* plaintiff, the court lowers the pleading standards, but the court " 'will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded.' " *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam); *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## DISCUSSION

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a due process claim arising out of prison discipline, a prisoner must establish either (1) that he has a liberty interest protected by the due process clause itself or (2) that he has a liberty interest created by state law and that the prison action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

"[T]here is no constitutionally based liberty interest in participating in a work release program[.]" *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (citing *Johnson v. Stark*, 717 F.2d 1550 (8th Cir. 1983) (per curiam)). Nor has the Eighth Circuit found a constitutionally based liberty interest in continued participation in a work release program. *See Hake v. Gunter*, 824 F.2d 610, 613-14 (8th Cir. 1987); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996).

Cowherd may claim that South Dakota's statutes, rules, and regulations create a constitutionally-protected liberty interest. Cowherd must then also allege that defendants' actions caused an "atypical and significant hardship." *Sandin*, 515 U.S. at 484. The court will first consider whether Cowherd alleges any facts that could constitute an "atypical and significant hardship."

5

The Eighth Circuit instructed courts to "compare the conditions to which the inmate was exposed in segregation with those he or she could 'expect to experience as an ordinary incident of prison life.' " *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (quoting *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)). The "procedures used to confine the inmate in segregation" are not considered. *Phillips*, 320 F.3d at 847 (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

The Eighth Circuit considered whether the revocation of a prisoner's work release status was an atypical or significant deprivation in *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996). The court reasoned that the plaintiff had not suffered an atypical or significant deprivation when the plaintiff was returned to his prior institutional placement, had not yet participated in work release, and received no additional time on his sentence. *Id.* In so holding, the court relied on *Dominique v. Weld*, 73 F.3d 1156 (1st Cir. 1996). The plaintiff in *Dominique* had participated in work release for four years when his status was revoked, and he was transferred to a medium security prison. *Id.* (citing *Dominique*, 73 F.3d at 1157). The Eighth Circuit noted:

> On appeal, the First Circuit applied *Sandin v. Conner* and concluded that, because the conditions at the medium security facility were similar to those ordinarily experienced by a large number of inmates on a daily basis, placement in such a facility was not an atypical hardship. The Court noted that the change between the 'quasi-freedom' of work release and a medium security facility may have been a significant deprivation but, nonetheless, it was not an atypical deprivation.

6

*Id.* (citing *Dominique*, 73 F.3d at 1160). In this case, Cowherd spent twenty days in segregated confinement and then transferred to a medium security prison.

During the twenty days in segregated confinement, Cowherd argues that he was deprived of access to radios, books, regular showers, and recreation time. Docket 14 at 4. Given the duration of his time in segregated confinement, these are all conditions Cowherd could expect to experience as an incident of prison life.

The Eighth Circuit has held that segregated confinement does "not constitute an 'atypical and significant' hardship when compared to the burdens of ordinary prison life." *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (internal quotation omitted). In *Freitas*, the plaintiff complained his due process rights were violated when he was disciplined and transferred to a different facility and placed in "on-call" status for thirty days. These disciplinary measures meant the prisoner was: placed in "lock-up" (i.e. was allowed out of his cell for only one or two hours per day), allowed fewer visitors and no phone calls, not allowed to work at a prison job, restricted in his ability to keep personal items in his cell, and restricted in his ability to earn good time credits. *Frietas*, 109 F.3d at 1337. Here, Cowherd spent even less time in segregated confinement. As a matter of law, this does not amount to an atypical or significant deprivation that is necessary to state a due process claim.

In light of *Sandin, Callender* and *Freitas*, the court finds that Cowherd fails to allege an atypical and significant hardship that is necessary to state a

7

due process claim. As such, Cowherd fails to state a claim upon which relief may be granted, and his claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Even if Cowherd adequately alleged an atypical and significant hardship necessary to state a due process claim, Cowherd fails to identify a liberty interest created by South Dakota law. Cowherd claims two sources of liberty. First, Cowherd claims SDCL § 24-8-1 creates a liberty interest. SDCL § 24-8-1 states,

> The Department of Corrections may conditionally release selected inmates and may extend the limits of the place of confinement of such inmates of the state penitentiary. If the warden determines that the character and attitude of an inmate reasonably indicate that the inmate may be so trusted, the warden may release and provide for continued supervision of such an inmate to work at paid employment, to seek employment, or to participate in vocational training or other educational programs in the community after such employment or program has been investigated and approved pursuant to rules promulgated by the Department of Corrections. The warden may, with or without cause, terminate or suspend any such release.

Cowherd argues that, because the warden did not terminate or suspend his release, he had a liberty interest in continued work release. Docket 13-1 at 3. SDCL § 24-8-1 does not create a liberty interest. The statute gives the Department of Corrections discretion to conditionally release inmates. And the statute does not state that the warden is the exclusive means to revoke such release.

Second, Cowherd claims that the contract he signed with the Department of Corrections stated that he would not be removed from work release status unless he committed a rule violation. Docket 13-1 at 3. Such a contract is not

8

a source of liberty necessary to support a Due Process claim. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Thus, it is ORDERED

1. Cowherd's motion for leave to file a second amended complaint (Docket 13) is granted.

2. Cowherd fails to state a claim upon which relief can be granted, and his second amended complaint is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED June 6, 2019.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE